**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

JUAN PABLO UGUNA-SOTAMBA

      Petitioner,

v.                                                                                          Civ. No. 26-582 JB/GJF

DORA CASTRO, Warden of the Otero County
Processing Center; MARY DE ANDA-YBARRA,
Field Office Director of ICE Enforcement and Removal
Operations, El Paso Field Office;
KRISTI NOEM, Secretary of the
Department of Homeland Security;
PAMELA BONDI, Attorney General,
in their official capacities,

      Respondents.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION ON VERIFIED
PETITION FOR WRIT HABEAS CORPUS (DKT. NO. 1) AND EMERGENCY MOTION
FOR TEMPORARY RESTRAINING ORDER (DKT. NO. 11)**[1]

THIS MATTER is before the Court on the *Verified Petition for Writ Habeas Corpus and*

*Complaint for* (Dkt. No. 1) ("Petition") and the *Emergency Motion for Temporary Restraining*

*Order* (Dkt. No. 11) ("TRO Motion"), filed by Petitioner Juan Pablo Uguna-Sotamba ("Petitioner"

or "Mr. Uguna-Sotamba"). Respondents Mary De Anda-Ybarra, Kristi Noem, and Pamela Bondi

(collectively, the "Federal Respondents") responded to the Petition. Resp., Dkt. No. 8.[2]

Respondent Dora Castro, Warden of the Otero County Processing Center where Petitioner is being

---

[1] The undersigned files this Proposed Findings and Recommended Disposition ("PFRD") pursuant to the presiding judge's Order of Reference (Dkt. No. 3).

[2] When a public officer who is a party in an official capacity ceases to hold office while the case is pending, the officer's successor "is automatically substituted as a party." A court "may order substitution at any time, but the absence of such an order does not affect the substitution." Fed. R. Civ. P. 25(d). Kristi Noem and Pamela Bondi are no longer, respectively, the Secretary of the Department of Homeland Security ("DHS") or the Attorney General. The Court hereby orders substitution of current DHS Secretary Markwayne Mullin for Kristi Noem and Acting Attorney General Todd Blanche for Pamela Bondi.

held, is separately represented and notified the Court that she takes no positions separate from the Federal Respondents. *See* Clerk's Minutes 2, Dkt. No. 15.[3] Petitioner filed a reply. Reply, Dkt. No. 9. Thereafter, on April 14, 2026, Petitioner filed the TRO Motion, to which Respondents responded. *See* TRO Mot., Dkt. No. 11; TRO Resp., Dkt. No. 14 This Court held a hearing on the TRO Motion on April 16, 2026. Clerk's Minutes, Dkt. No. 15. The parties agreed that an additional hearing on the Petition was unnecessary, and the Court could decide the matter on the current record. This matter is ready for decision.

Having reviewed the Petition, the TRO Motion, the briefs, the evidence, the law, and the arguments of counsel, the Court recommends that the Petition be granted as to the second and fourth claims for relief for violation of the Immigration and Nationality Act ("INA") and procedural due process and denied as to the first and third claims for relief. The Court also advises ordering an individualized bond hearing to be held within seven days. Given this recommendation regarding the merits of the Petition, the Court recommends denying the TRO Motion as moot.

## I.    INTRODUCTION

This case is one of hundreds of § 2241 habeas cases brought in this District and one of many thousands brought in districts across the nation stemming from a new interpretation of the INA, 8 U.S.C. § 1225(b)(2)(A), by DHS. From 1997 to 2025, through five successive presidential administrations, when United States Immigration and Customs Enforcement ("ICE") detained noncitizens[4] within the interior of the United States who did not have a pending order of removal, it did so under 8 U.S.C. § 1226. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494, 500 (5th Cir. 2026). On July 8, 2025, however, DHS issued new interim guidance that all noncitizens who enter the

---

[3] Given their alignment, the Court will refer to the respondents collectively as "Respondents" herein.

[4] The INA defines an "alien" as "any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3). The Court uses "alien" and "noncitizen" interchangeably in this PFRD.

2

country without being admitted or who arrive without proper documentation are subject to *mandatory* detention, regardless of their length of residency in the country, unless they are paroled under INA § 212(d)(5). *See id.*

The Board of Immigration Appeals ("BIA") considered this new policy interpretation in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA Sept. 5, 2025). The BIA held that the plain language of 8 U.S.C. § 1225(b)(2)(A) deprived immigration judges of authority to hear bond requests or to grant bonds to aliens who are present in the United States without admission. *Id.* at 225. Yajure Hurtado had crossed into the United States without inspection in 2022, lived in the United States for years, was granted temporary protected status in 2024 by the United States Citizenship and Immigration Services ("USCIS"), but was arrested after that status expired. *Id.* at 216-17. The BIA concluded, "Aliens, like respondent, who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer." *Id.* at 228. "Remaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an 'admission.'" *Id.*

The BIA considered significant the history and passage of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), which substituted the term "admission" for "entry" and replaced deportation and exclusion proceedings with removal proceedings. *Id.* at 222-23. As the BIA explained, Congress enacted the IIRIRA to remedy the unintended consequence of having created a statutory scheme where aliens who enter without inspection could take advantage of greater procedural and substantive rights afforded in deportation proceedings, while aliens who presented themselves at the border were limited to more summary exclusion proceedings. *Id.* at 223 (quoting *Martinez v. Attorney General of U.S.*, 693 F.3d 408, 413 n.5 (3d Cir. 2012)). Consequently, according to the BIA, aliens who enter without inspection or admission remain

"applicants for admission," *id.* at 224, regardless how long they have lived here, until an immigration officer determines that they are "clearly and beyond a doubt entitled to be admitted," *id.* at 228 (quoting 8 U.S.C. § 1225(b)(2)(A)). In the wake of *Yajure Hurtado*, immigration judges have uniformly concluded that they lack jurisdiction to hold bond hearings for detainees held under § 1225(b)(2)(A).[5]

According to Respondents, Petitioner is properly detained under § 1225(b)(2)(A) because, as an alien present in the United States without being admitted, he remains an applicant for admission, and his due process rights are limited to the statutory rights provided in the INA. But Petitioner urges the Court to follow the vast majority of district courts and find that he may be detained only under § 1226, which entitles him to a bond hearing or release. For the reasons that follow, the Court recommends concluding that § 1225(b)(2)(A) does not apply to Petitioner, and that Respondents violated the INA and the Due Process Clause when subjecting him to mandatory detention for months without a bond hearing, as required by § 1226.

## II.    FACTUAL BACKGROUND

Juan Pablo Uguna-Sotamba is a 52-year-old Ecuadorian national. Pet. ¶ 1, Dkt. No. 1; Resp'ts' Ex. B, Dkt. No. 8-2 at 3 of 5. He entered the United States without inspection in March 2000 in California. Pet. ¶ 1, Dkt. No. 1. He moved to Manhattan, New York, where he lived for over 20 years working as a carpenter. *Id.* ¶¶ 3-4. He has no criminal history. *Id.* ¶ 15; Pet'r's Ex. B, Dkt. No. 1-4 at 4 of 4.

---

[5] *Yajure Hurtado* is called a "precedential" opinion, which in this context means a decision identified by the BIA as binding authority on U.S. immigration courts. The Supreme Court recently directed district courts to "exercise independent judgment in determining the meaning of statutory provisions." *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 394 (2024). Courts "may not defer to an agency interpretation of the law simply because a statute is ambiguous." *Id.* at 413. Consequently, while binding on immigration courts, *Yajure Hurtado* is not binding on this Court.

On or about December 22, 2024, Petitioner's previous employer filed an I-140 application on his behalf. Pet. ¶ 4, Dkt. No. 1. An I-140 is an "Immigrant Petition for Alien Worker" that proves that the worker qualifies for an employment-based green card and reserves a priority date for a future green card. *Id.* The Form I-140 was approved. *See* Pet'r's Ex. B, Dkt. No. 1-4 at 3 of 4.[6]

On November 13, 2025, ICE-ERO deportation officers were conducting a targeted surveillance operation to locate and arrest a non-citizen, who was *not* Petitioner, pursuant to a Warrant for Arrest (Form I-200). *See* Pet. ¶ 5, Dkt. No. 1; Pet'r's Ex. B at 3, Dkt. No. 1-4 at 3 of 4. Two officers approached Petitioner when he was returning to his building. *See* Pet. ¶ 6, Dkt. No. 1; Pet'r's Ex. B, Dkt. No. 1-4 at 3 of 4. The officers asked him if he was the person they were looking for, and when he responded negatively, they continued to ask him questions about what country he was from. *See* Pet. ¶¶ 6-7, Dkt. No. 1; Pet'r's Ex. B, Dkt. No. 1-4 at 3 of 4. After ICE officers learned his name, a record check revealed that he entered the United States without inspection and did not have valid immigration documentation authorizing his presence in the country. *See* Pet'r's Ex. B, Dkt. No. 1-4 at 3 of 4.[7]

---

[6] With respect to the Form I-140, Congress set forth a three-step process for an alien to become a lawful permanent resident ("LPR") through an employment-based immigrant visa. *See Elim Church of God v. Harris*, 722 F.3d 1137, 1139 (9th Cir. 2013); *Alva Decking, Inc. v. Holder*, No. 1:12-cv-2330-JLK-AP, 2013 WL 1609983, at *2 (D. Colo. Apr. 15, 2013). First, the employer petitions for an Alien Labor Certification with the Department of Labor and must show that there are insufficient U.S. workers available who are willing and able to perform the work at the prevailing wage for the occupation in the area of intended employment. *Alva Decking*, 2013 WL 1609983, at *2 (citing 8 U.S.C. § 1182(a)(5)). Second, the employer files a Form I-140 petition to the USCIS on behalf of the beneficiary alien and must demonstrate the employer has an approved labor certification and the employee meets the minimum requirements of the position. *See Elim*, 722 F.3d at 1139; *Alva*, 2013 WL 1609983, at *2 (citing 8 U.S.C. § 1153(b)(3)(A)(iii); 8 C.F.R. § 204; 8 U.S.C. § 1154(a)). Third and finally, after approval of the Form I-140 petition, the alien must apply for adjustment of status, which is adjudicated by the USCIS or by the immigration court if the alien is in removal proceedings. *Alva*, 2013 WL 1609983, at *2 (citing 8 U.S.C. § 1255(a)).

[7] The parties dispute how ICE officers learned Petitioner's identity. Petitioner asserts that, when he refused to sign a document presented to him, the officers began harassing him and pressuring him to sign it, but he refused and declined to provide personal information. Pet. ¶ 7, Dkt. No. 1. Relying on the Form I-213, Respondents contend that the ICE officers' encounter with Petitioner was consensual, and he freely gave them his name and admitted he was from Ecuador. Pet'r's Ex. B, Dkt. No. 1-4 at 3 of 4. The documents before the Court establish that ICE officers learned his identity that evening, as they included his name in the Form I-200 Warrant and Notice to Appear that they prepared

At 6:12 p.m., four ICE officers arrested Petitioner. *See id.*; Pet. ¶ 7, Dkt. No. 1. An immigration officer served him with a Warrant for Arrest of Alien (Form I-200) in Petitioner's name and dated 11/13/2025. *See* Resp'ts' Ex. A, Dkt. No. 8-1 at 6 of 6. The same evening, an ICE officer served Petitioner with a Notice to Appear ("NTA") dated November 13, 2025, but Petitioner refused to sign it. *See* Resp'ts' Ex. A, Dkt. No. 8-1 at 2-3 of 6. The NTA charged Petitioner as an alien present in the United States who has not been admitted or paroled and who is subject to removal under Section 212(a)(6)(A)(i) of the INA. *Id.* DHS transferred him to the Otero County Processing Center on December 13, 2025. *See id.* at 1 of 6.

On January 7, 2026, Petitioner filed for asylum. Pet. ¶ 15, Dkt. No. 1. He also filed a bond redetermination request. *Id.* On January 8, 2026, the immigration court sent Petitioner notice of an individual hearing in his case. *See* Resp'ts' Ex. B, Dkt. No. 8-2 at 1 of 5. The immigration judge denied bond on January 30, 2026, based on *Yajure Hurtado*. *See* Pet. ¶ 15, Dkt. No. 1; Order of Immigration Judge, Dkt. No. 17 (denying request for change in custody status because "Matter of Hurtado; Flight Risk due to form of relief is speculative (pending motion to pretermit)"). On February 19, 2026, the immigration court found Petitioner removable and inadmissible under Section 212(a)(6)(A)(i) of the INA and denied his application for asylum, for Withholding of Removal under INA § 241(b)(3), and for Withholding of Removal under the Convention Against Torture. Resp't's Ex. C, Dkt. No. 8-3 at 1. The immigration judge ordered him removed to Ecuador. *Id.* at 3. The order noted his appeal was due March 23, 2026. *Id.* at 4.

---

on the night of Nov. 13, 2025. *See* Gov.'s Ex. A, Dkt. No. 8-1 at 3-6 of 6. For the reasons described *infra*, the Court need not resolve this factual dispute, as the Petition should be resolved based on the statutory grounds for his current custody. That question does not rely on the manner of his arrest.

Petitioner filed a notice of appeal with the BIA on April 9, 2026.  *See* TRO Mot. n.1, Dkt. No. 11 at 4 of 6. The BIA accepted his belatedly filed appeal, and the appeal is now pending. TRO Resp. 1, Dkt. No. 14.

### III.    PROCEDURAL HISTORY

On February 26, 2026, Petitioner filed his Petition under 28 U.S.C. § 2241, the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq*., and the All Writs Act, 28 U.S.C. § 1651. *See* Pet. ¶¶ 19-20, Dkt. No. 1. The Petition contains four claims: (1) violation of the INA for failing to issue Petitioner a warrant prior to his arrest; (2) violation of procedural due process for failing to provide n individualized determination of flight risk and dangerousness before detaining him; (3) violation of substantive due process based on prolonged and continued detention; and (4) violation of 8 U.S.C. § 1226(a) based on improperly detaining him under § 1225(b). *Id.* ¶¶ 69-80. For remedies, Petitioner requests that the Court: (i) assume jurisdiction; (ii) enjoin his transfer outside the United States; (iii) direct Respondents to show cause within three days why the Petition should not be granted; (iv) order his immediate release pending resolution of this matter; (v) declare his detention unlawful under the Due Process Clause of the Fifth Amendment; (vi) issue a writ of habeas corpus directing his release; and (vii) award reasonable attorney's fees and costs. *Id.* at 20.

This Court entered an *Order to Show Cause* directing Respondents to respond to the Petition within 14 days and show cause why the requested relief should not be granted. Order, Dkt. No. 4. The Court found good cause to allow Respondents more than three days to respond. *Id.* Given the Court's Order and that Respondents filed a timely response to the Petition, Petitioner's request for an order to show cause is now moot, and it should be denied.

In their response, Respondents argue that Petitioner's arrest-based theories do not entitle him to release because his present custody arises from the INA and ensuing immigration

7

proceedings, not the initial encounter. According to Respondents, the Due Process Clause does not require a pre-deprivation individualized custody hearing before immigration officers take a removable noncitizen into administrative custody. As for Petitioner's current detention, Respondents contend it is lawful under § 1225(b)(2)(A) because Petitioner is a noncitizen present in the United States without having been admitted and Petitioner's due process rights are limited to those set forth in the INA. Should the Court find relief warranted, Respondents urge the Court to provide only a bond hearing, not immediate release or broad prospective injunctive relief.

Petitioner submitted a reply largely reiterating his prior arguments in support of his Petition. *See* Reply, Dkt. No. 9. He also subsequently filed an *Emergency Motion for Temporary Restraining Order* (Dkt. No. 11), seeking the issuance of a temporary restraining order ("TRO") prohibiting the Government from removing him from the United States. Petitioner asserts that ICE officers told him they intend to remove him, notwithstanding his pending appeal. *Id.*, Dkt. No. 11 at 3 of 6. For their part, Respondents contend that Petitioner cannot show emergency injunctive relief is necessary to preserve the status quo, because the BIA has accepted his late-filed appeal, the appeal is pending, and 8 C.F.R. § 1003.6(a) prevents the immigration judge's order from being executed while that appeal remains pending before the BIA. Resp. 1, Dkt. No. 14. The Court held a hearing on the TRO Motion on April 16, 2026, at which Respondents reiterated that Petitioner will remain in the United States and will not be removed until the appeal is resolved and the order of removal becomes final. *See* Clerk's Minutes 2, Dkt. No. 15.

## IV.    LEGAL OVERVIEW

An immigration judge conducts proceedings to decide the inadmissibility or deportability of an alien. 8 U.S.C. § 1229a(1)(1). Aliens placed in removal proceedings may be charged with an applicable ground of inadmissibility under § 1182(a) or of deportability under § 1227(a).

Inadmissible aliens are "ineligible to be admitted to the United States." 8 U.S.C. § 1182(a). "[A]ny immigrant at the time of application for admission" who does not possess "a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title" is "inadmissible." *Id.* § 1182(a)(7)(A)(i)(I).

Proceedings under § 1229a, unless otherwise specified, "shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States." *Id.* § 1229a(a)(3). In removal proceedings, a "notice to appear" must be given to the alien either personally or served through the mail. *Id.* § 1229(a)(1). The notice to appear includes, among other things, the nature of the proceedings and legal authority for them, the alleged violation of law, and the charges. *Id.*

The statutory provisions at issue in this case are those governing mandatory detention in 8 U.S.C. § 1225, and the "Apprehension and detention of aliens" in 8 U.S.C. § 1226.[8] After

---

[8] The parties agreed at the hearing that, for statutory analysis purposes, the Court must decide whether Section 1225 or 1226 applies, because Section 1231 is not yet applicable. Section 1231 provides that "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1)(A). The 90-day removal period starts

on the latest of the following:

(i)     The date the order of removal becomes administratively final.
(ii)    If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
(iii)   If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

*Id.* § 1231(a)(1)(B). "During the removal period, the Attorney General shall detain the alien." *Id.* § 1231(a)(2)(A). However, as relevant here, the decision from which an appeal to the Board may be taken shall not be executed "while an appeal is pending." 8 C.F.R. § 1003.6(a). Petitioner's BIA appeal is currently pending, so the removal period has not yet begun. Detention thus has not shifted to § 1231, so the habeas Petition remains ripe for decision.

discussing these INA provisions and implementing regulations in more detail, the Court will turn

to an overview of due process law in the immigration context before analyzing how the law applies

to Petitioner's detention.

### A.  Overview of Sections 1225 and 1226

"Congress has authorized immigration officials to detain some classes of aliens during the

course of certain immigration proceedings" to give "immigration officials time to determine an

alien's status without running the risk of the alien's either absconding or engaging in criminal

activity before a final decision can be made." *Jennings v. Rodriguez*, 583 U.S. 281, 286 (2018).

Sections 1225 and 1226 govern the detention of noncitizens prior to a final order of removal. *See*

*id.* at 287-89. "In sum, U.S. immigration law authorizes the Government to detain certain aliens

seeking admission into the country under §§ 1225(b)(1) and (b)(2)" and "to detain certain aliens

already in the country pending the outcome of removal proceedings under §§ 1226(a) and (c)." *Id.*

at 289.

Generally, a non-citizen "present in the United States who has not been admitted or who

arrives in the United States (whether or not at a designated port of arrival and including an alien

who is brought to the United States after having been interdicted in international or United States

waters) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. §

1225(a)(1). The implementing regulations define an "arriving alien" as "an applicant for admission

coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit

through the United States at a port-of-entry , or an alien interdicted in international or United States

waters and brought into the United States by any means, whether or not to a designated port-of-

entry, and regardless of the means of transport." 8 C.F.R. § 1001.1(q). An alien who is caught

trying to enter at a place other than a port of entry is treated as an arriving alien. *Department of*

10

*Homeland Security v. Thuraissigiam*, 591 U.S. 103, 108 (2020) (citing 8 U.S.C. §§ 1225(a)(1), (3)). All aliens "who are applicants for admission *or otherwise seeking admission* or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3) (emphasis added). "Admission" or "admitted" means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Section 1225(a) also provides for the "Withdrawal of application for admission": "An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4). "An applicant for admission may be required to state under oath any information sought by an immigration officer regarding the purposes and intentions of the applicant *in seeking admission to the United States*, including the applicant's intended length of stay and whether the applicant intends to remain permanently or become a United States citizen, and whether the applicant is inadmissible." *Id.* § 1225(a)(5) (emphasis added).

Section 1225(b)(1) sets forth the procedures for the "Inspection of aliens arriving in the United States and certain other aliens who have not been admitted or paroled." 8 U.S.C. § 1225(b)(1). An immigration officer may order expedited removal of an arriving alien without further hearing or review if the officer determines that the alien is inadmissible under § 1182(a)(6)(C) or 1182(a)(7), provisions governing inadmissibility due to fraud, misrepresentation, or lack of valid documentation. 8 U.S.C. § 1225(b)(1)(A)(i); *Jennings*, 583 U.S. at 287 (citing 8 U.S.C. § 1225(b)(1)(A)(i) (in turn citing §§ 1182(a)(6)(C), (a)(7))).

"Applicants can avoid expedited removal by claiming asylum." *Thuraissigiam*, 591 U.S. at 109. "If an applicant 'indicates either an intention to apply for asylum' or 'a fear of persecution,'

the immigration officer 'shall refer the alien for an interview by an asylum officer.'" *Id.* (quoting §§ 1225(b)(1)(A)(i)-(ii)). "If the asylum officer finds an applicant's asserted fear to be credible, the applicant will receive 'full consideration' of his asylum claim in a standard removal hearing." *Id.* at 110 (citing 8 C.F.R. § 208.30(f)) (internal footnote omitted). Applicants who raise an asylum claim are nevertheless "detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." *Id.* at 111 (quoting § 1225(b)(1)(B)(iii)(IV)). If an alien is found to have a credible fear, he may be detained pending further consideration of the asylum application. *Id. See also* 8 U.S.C. § 1225(b)(1)(B)(ii) ("If the [asylum] officer determines at the time of the interview that an alien has a credible fear of persecution …, the alien shall be detained for further consideration of the application for asylum.").

Section 1225(b)(2) governs "Inspection of other aliens." 8 U.S.C. § 1225(b)(2). "Section 1225(b)(2) is broader" than § 1225(b)(1) and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1) (with specific exceptions not relevant here)." *Jennings*, 583 U.S. at 287. Under § 1225(b)(2), "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien **seeking admission** is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a [removal] proceeding…." 8 U.S.C. § 1225(b)(2)(A) (bold added); *Jennings*, 583 U.S. at 288. Detention under § 1225(b) is mandatory until immigration officers decide either the application for asylum or until removal proceedings conclude. *Jennings*, 583 U.S. at 299-300. Except for temporary parole under 8 U.S.C. § 1182(d)(5)(A) for urgent humanitarian reasons or significant public benefit, "there are no *other* circumstances under which aliens detained under § 1225(b) may be released." *Id.* at 300.

Section 1226(a) establishes the process of arresting and detaining noncitizens "already present in the United States." *Jennings*, 583 U.S. at 303. As the Supreme Court explained, "Section

1226(a) creates a default rule for those aliens by permitting—but not requiring—the Attorney General to issue warrants for their arrest and detention pending removal proceedings." *Id.* Section 1226(a) provides: "On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). As a matter of federal regulation, noncitizens detained under § 1226(a) generally "receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)).

According to the federal regulations pertaining to "Apprehension, custody, and detention," at the time of issuance of the notice to appear, or anytime afterwards and until removal proceedings are concluded, the noncitizen "may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest." 8 C.F.R. § 236.1(b)(1). The regulations designate which immigration officers may issue an arrest warrant and which may serve it. *Id.* Section 236.1(d)(1) provides:

> After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 1240 becomes final, request amelioration of the conditions under which he or she may be released. Prior to such final order, … the immigration judge is authorized to exercise the authority in section 236 of the Act … to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released….

8 C.F.R. § 236.1(d)(1).

Section 1357 provides that an immigration officer has authority to interrogate any person he believes to be an alien as to his right to be in the United States. 8 U.S.C. § 1357(a)(1). That section also gives an immigration officer the "power without warrant" to

> arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest, but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States.

8 U.S.C. § 1357(a)(2). Federal regulations require that an alien subject to a warrantless arrest be examined by an officer, and if the examining officer is satisfied there is prima facie evidence the noncitizen is present in the United States in violation of immigration laws, the examining officer will refer the case to an immigration judge for further inquiry. *See* 8 C.F.R. § 287.3(a)-(b). "[A] determination will be made within 48 hours of the arrest, except in the event of an emergency or other extraordinary circumstance in which case a determination will be made within an additional reasonable period of time, whether the alien will be continued in custody or released on bond or recognizance and whether a notice to appear and warrant of arrest as prescribed in 8 CFR parts 236 and 239 will be issued." 8 C.F.R. § 287.3(d). Officers authorized to issue an arrest warrant may release a noncitizen if the noncitizen shows "that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 236.1(c)(8).

The Attorney General "may release the alien" on bond or conditional parole, unless the alien has committed certain criminal offenses or terrorist activities listed in § 1226(c), in which case detention is mandatory. *See* 8 U.S.C. § 1226(a)(2)(A)–(B), (c); *Jennings*, 583 U.S. at 288-89, 303. "The Attorney General at any time may revoke a bond or parole authorized under subsection (a), rearrest the alien under the original warrant, and detain the alien." 8 U.S.C. § 1226(b). In 2025, Congress passed the Laken Riley Act, which added additional crimes triggering § 1226(c)'s custodial provisions. *See* Pub. L. No. 119-1, § 2, 139 Stat. 3 (2025) (codified as amended at § 1226(c)(1)(E)).[9] The Amendment mandated custody for aliens inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) who are charged, arrested, or convicted of burglary, theft,

---

[9] Section 1226(c) does not apply here because it is undisputed Petitioner has no criminal history.

larceny, shoplifting, assault of a law enforcement officer, or any crime resulting in death or serious bodily injury to another person. 8 U.S.C. § 1226(E)(i)-(ii).

### B.  Overview of Due Process in the Immigration Context

The Fifth Amendment's Due Process Clause prohibits the federal government from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. V. The core concept of due process is protection of the individual against arbitrary government action. *County of Sacramento v. Lewis*, 523 U.S. 833, 845 (1998). Due process comes in two varieties. Substantive due process prevents the government from engaging in conduct that shocks the conscience or interferes with rights implicit in the idea of ordered liberty. *Id.* at 847. Procedural due process, by contrast, requires notice and an opportunity to be heard appropriate to the nature of the case before depriving an individual of a life, liberty, or property interest. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Immigration proceedings are civil in nature, and as such, the Government's interests are non-punitive, such as ensuring the appearance of an alien at future immigration proceedings and protecting the community from danger. *Id.*

The Constitution gives the political branches "plenary authority to decide which aliens to admit" and the "power to set the procedures to be followed in determining whether an alien should be admitted." *Thuraissigiam*, 591 U.S. at 139. An alien seeking initial entry to the United States is only entitled to the process authorized by Congress. *Id.* at 138-39. "While aliens who have established connections in this country have due process rights in deportation proceedings, the Court long ago held that Congress is entitled to set the conditions for an alien's lawful entry into

this country and that, as a result, an alien at the threshold of initial entry cannot claim any greater rights under the Due Process Clause." *Id.* at 107 (holding that alien detained near border shortly after unlawful entry did not "effect an entry" and only has those rights regarding admission that Congress provided by statute). "But once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693.

## V.    ANALYSIS

### A.  Petition should be granted in part and denied in part.

#### 1.  Detention for months without bond hearing at which immigration judge considers whether government has valid interest in detaining Petitioner violates INA.

Petitioner argues that § 1226 governs the detention of aliens like himself who were already present in the interior of the United States, while § 1225 applies to people who recently crossed the border or are arriving at ports of entry. He relies on the plain text of the statutes, longstanding practice, *Jennings*, and the reasoning of the majority of district courts to have considered the issue. *See* Petition ¶¶ 52-60, Dkt. No. 1; Reply 4, Dkt. No. 9. For their part, Respondents assert that, as an undocumented alien who entered without inspection and parole and is without lawful status, Petitioner is subject to mandatory detention under § 1225(b)(2)(A). Resp. 9, Dkt. No. 8.

This Court parts ways with Respondents' analysis and instead concludes from the text and structure of § 1225 that "seeking admission" has a meaning independent of "applicant for admission." The text of § 1225(b)(2)(A) makes clear that it applies to (1) "an applicant for admission", (2) who is "seeking admission," and (3) "is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). The provision therefore limits mandatory detention only

16

to those applicants for admission who are also seeking admission. *See Castanon-Nava v. U.S. Dept. of Homeland Security*, 161 F.4th 1048, 1061 (7th Cir. 2025) ("And while a noncitizen arrested in the Midwest might qualify as 'an alien present in the United States who had not been admitted,' § 1225(a)(1), the mandatory detention provision upon which Defendants rely[] limits its scope to an 'applicant for admission' who is 'seeking admission,' § 1225(b)(2)(A*).")*; *Singh v. Noem*, No. CIV 25-1110 JB/KK, 2026 WL 146005, at *20-21 (D.N.M. Jan. 20, 2026) (explaining that "seeking admission" has separate meaning and narrows broader universe of "applicants for admission"). To construe "applicant for admission" to be the same as an alien "seeking admission" would render the latter phrase surplusage. *See Castanon-Nava*, 161 F.4th at 1061. Had Congress intended all applicants for admission to be detained, it could have drafted § 1225(b)(2)(A) far more simply: "Subject to subparagraphs (B) and (C), if the examining immigration officer determines that an applicant for admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained…." Instead, Congress limited detention to those applicants for admission who are not clearly and beyond a doubt entitled to be admitted *and* who are "seeking admission." 8 U.S.C. § 1225(b)(2)(A). The statute's use of the present participle "seeking" demonstrates the need for the noncitizen to be taking some action *at present* in attempting to gain admission. This interpretation also accords with § 1225(a)(3), which suggests the terms are not coterminous: "All aliens (including alien crewmen) who are applicants for admission *or otherwise seeking admission* or readmission to or transit through the United States shall be inspected by immigration officers." 8 U.S.C. § 1225(a)(3) (emphasis added). If the terms had the same meaning, it would be redundant to use "seeking admission" in § 1225(a)(3).

The Court is well aware that two circuits, in 2-1 decisions, have concluded the opposite. After the completion of briefing in this case, the Eighth Circuit agreed with the Fifth Circuit's

reasoning in *Buenrostro-Mendez* that the phrase "applicant for admission" and "seeking admission" mean the same. *Avila v. Bondi*, 170 F.4th 1128, 1133-34 (2026) (quoting with approval *Buenrostro-Mendez*, 166 F.4th at 502). Both circuits held that an alien who entered the United States many years ago without inspection and lacking legal documents authorizing his admission may be detained without bond under § 1225(b)(2)(A). *Id.* at 1132, 1138; *Buenrostro-Mendez*, 166 F.4th at 498-500. Neither *Avila* nor *Buenrostro-Mendez* is binding on this Court, however, and this Court declines to follow their reasoning.

Having determined that "seeking admission" has its own separate meaning, the Court must next discern what that meaning is. Guided by the statutory definition of "admission," the Court concludes that "seeking admission" is seeking "lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13). While the term "lawful" is not separately defined in the INA, *see* 8 U.S.C. § 1101, the term lawful entry refers to the process in which an alien is inspected and granted entry into the United States by an immigration officer. *See Hing Sum v. Holder*, 602 F.3d 1092, 1096 (9th Cir. 2010) (explaining that "admission" under § 1101(a)(13)(A) "refers to a procedurally regular admission and not a substantively lawful admission"); *Singh*, 2026 WL 146005, at *35 ("Admission requires at minimum 'procedural regularity' with entry procedures.") (quoting *Matter of Quilantan*, 25 I. & N. Dec. 285, 290 (BIA 2010)). The Supreme Court has indicated that § 1225's framework is premised on inspection at the border of people who are "seeking admission" to the United States. *See Jennings*, 583 U.S. at 289 ("U.S. immigration law authorizes the Government to detain certain aliens seeking admission *into the country* under §§ 1225(b)(1) and (b)(2). It also authorizes the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings under §§ 1226(a) and (c).") (Emphasis added).

The structure and title of § 1225 also support this interpretation. The title of a statutory section can be a tool "'for the resolution of a doubt' about the meaning of a statute." *Dubin v. United States*, 599 U.S. 110, 121 (2023) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 234 (1998)). Section 1225 is titled, "*Inspection* by immigration officers; expedited removal of inadmissible *arriving* aliens; referral for hearing." 8 U.S.C. § 1225 (emphasis added). Those terms suggest that § 1225 applies during inspection at the border. The text of § 1225 reinforces that its scope is focused on the inspection process. *See*, *e.g.*, 8 U.S.C. § 1225(a)(3). "By anchoring § 1225 in inspection concepts that Congress defines, it signals that an inspection at the threshold of entry triggers the powers and procedures that follow." *Singh*, 2026 WL 146005, at *14. The implementing regulations likewise tie such inspections to the border. *See* 8 C.F.R. § 235.1(a) ("Application to lawfully enter the United States shall be made in person to an immigration officer at a U.S. port-of-entry when the port is open for inspection, or as otherwise designated in this section."). Consequently, the text and structure of § 1225 suggest that an alien "seeking admission" is one who does so at the border.

The legislative history accords with this construction. Before passage of the IIRIRA, 8 U.S.C. § 1252(a)(1) provided that noncitizens arrested in the United States pending a determination of deportability could be released on bond. *See* 8 U.S.C. § 1252(a)(1) (1996). After passage of the IIRIRA, § 1226(a) now governs the apprehension and detention of aliens on a warrant. 8 U.S.C. § 1226(a). When Congress passed the IIRIRA, it noted that the new § 1226(a) "restates the current provisions in section 242(a)(1) regarding the authority of the Attorney General to arrest, detain, and release on bond an alien who is not lawfully in the United States." H.R. Rep. 104-469(I), at 229 (Mar. 4, 1996). The Executive Office for Immigration Review drafted regulations in 1997 similarly explaining that noncitizens present in the country without having

been admitted or paroled, despite remaining applicants for admission, were nonetheless eligible for bond and bond redetermination under § 1226. *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997) ("Despite being applicants for admission, aliens who are present without having been admitted or paroled (formerly referred to as aliens who entered without inspection) will be eligible for bond and bond redetermination."). Given the longstanding practice of detaining noncitizens living in the United States on an arrest warrant and with the chance for bond, the legislative history suggests that Congress did not intend to alter this practice with the IIRIRA. Moreover, the fact that for decades the Executive Branch also did not interpret the IIRIRA in the manner urged by Respondents here or to use its purported mandatory detention authority signifies that "seeking admission" meant seeking lawful entry at the border. *Cf. Bankamerica Corp. v. United States*, 462 U.S. 122, 130-32 (1983) (explaining that, although authority granted by Congress cannot evaporate through lack of administrative exercise, Government's failure for over 60 years to exercise power it now claims under statute strongly suggests that statute should not be interpreted as granting such power).

Further supporting this interpretation is the following statutory history, as set forth by the Fifth Circuit in *Buenrostro-Mendez*:

> When Congress passed IIRIRA, it estimated that the detention mandate in § 1226(c) would require the detention of 45,000 new immigrants. See H.R. Rep. No. 104-469, pt. 1 at 118, 120, 123 (1996). Supposedly because Congress was worried about insufficient detention capacity, it included a provision that permitted delaying implementation of § 1226(c) for two years. IIRIRA § 303(b), 110 Stat. 3009-586 to 3009-587. IIRIRA did not include a similar provision for § 1225(b)(2)(A), even though, under the government's interpretation, § 1225(b)(2)(A) would require the detention of far more than 45,000 aliens. *See* H.R. Rep. No. 104-469, pt. 1, at 111 (estimating that about two million aliens who had entered without inspection were present in the United States around IIRIRA's enactment in 1996).

166 F.4th at 507. Although the majority in *Buenrostro-Mendez* declined to speculate on Congress's reasons for the deferred implementation of § 1226(c) but not of § 1225(b)(2)(A), that difference is compelling evidence that Congress did not view the IIRIRA as mandating the detention under § 1225(b)(2)(A) of the estimated two million aliens present in the United States who had not been admitted. *See id.* at 516 (J. Douglas, dissenting) ("Congress did not secretly require two million noncitizens to be detained without bond, when nothing like this had ever been done before, and the whole history of American immigration law suggested it would not be. We would expect more than simple statutory silence if, and when, Congress were to intend a major departure.") (internal quotations, citation, and footnote omitted). As Judge Douglas noted, construing the statute to expect the detention of millions of aliens in detention facilities strained by merely 45,000 people is a proverbially large elephant stuffed in a very small mousehole, and not one Congress envisioned when it passed the IIRIRA. *Id.* at 514-17.

The recent enactment of the Laken Riley Act adds weight to this understanding of Congressional intent. The Laken Riley Act expressly required detention for noncitizens inadmissible under § 1182(a)(6)(A) – aliens present without being admitted or paroled – if they commit certain listed crimes. That specification in the Act would not have been necessary if Congress understood § 1225(b)(2) to require mandatory detention of all inadmissible aliens already present in the United States. *See, e.g.*, *Munoz Teran v. Bondi*, Case No. 2:25-cv-01218-KWR-SCY, 2026 WL 161527, at *4 (D.N.M. Jan. 21, 2026) (Riggs, J.) (explaining that respondents' interpretation would render superfluous Laken Riley Act).

Significantly, immigration officers do not detain aliens under § 1225 pursuant to a warrant, whereas § 1226 expressly provides for the arrest and detention of an alien on a warrant. 8 U.S.C. § 1226(a). The regulations implementing § 1226 confirm that the Form I-200 is used for arrests

pursuant to an immigration officer's authority under § 1226. *See* 8 C.F.R. § 236.1(b)(1) ("At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest."). Section 1226 also applies to aliens who are charged as inadmissible, including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E) (explaining that Attorney General shall take into custody any alien who is inadmissible under paragraph (6)(A), (6)(C), or (7) of section 1182(a) and is charged with certain identified crimes). The overall structure of §§ 1225 and 1226 demonstrates that detention under § 1225 is done as part of the inspection process upon arrival at the border before an alien makes entry into the United States, and that after entry, § 1226 – with its warrant and bond hearing protections – applies to the apprehension and detention of inadmissible aliens within the interior of the country. *See Reyes-Martinez v. Woosley*, Civil Action No. 4:25-cv-150-RGJ, 2025 WL 3680330, at *7 (W.D. Ky. Dec. 18, 2025) (explaining that § 1225 detainees are detained upon arrival as statutory function of inspection process, not via arrest pursuant to administrative warrant, which supports conclusion that § 1225 is for individuals seeking admission at the border who do not need to be arrested). After all, "government intrusions have always been tolerated at the border that would be intolerable in the interior, for the obvious reason that citizens and noncitizens alike expect to be able to go about their business without having to show that they are 'clearly and beyond doubt entitled to be admitted' if taken, or mistaken, for an otherwise inadmissible noncitizen." *Buenrostro-Mendez*, 166 F.4th at 519 (Douglas, J., dissenting).

Petitioner entered the United States in March 2000 without inspection. He lived in the United States for over 25 years before his detention. ICE officers apprehended him outside his home in New York. Petitioner doubtless remains an "applicant for admission," because he is an

alien present in the United States without admission. *See* 8 U.S.C. § 1225(a)(1). But he is not "seeking admission" within the meaning of 8 U.S.C. § 1225(b)(2)(A). Because § 1225(b)(2)(A) does not apply, Respondents may detain him only under § 1226(a) and must grant him the process that statute affords him. *Cf. Castillo v. De Andra Ybarra*, No. CIV 25-1074 JB/JFR, 2026 WL 370497, at *2, 35-37 (D.N.M. Feb. 10, 2026) (concluding that petitioners, while applicants for admission, were not seeking admission under § 1225(b)(2) where they arrived in United States many years prior without inspection and were detained in interior of United States); *Garcia Lopez v. Castro*, No. Civ. 25-1144 JB/SCY, 2026 WL 524082, at *34-35 (D.N.M. Feb. 25, 2026) (holding that, where noncitizen first arrived in United States without inspection about 23 years ago and has no pending application or has taken no other action indicating he is actively seeking admission, United States may only detain him in accordance with § 1226(a)'s statutory provisions, not § 1225(b)(2)).

That Petitioner's employer applied on his behalf for a Form I-140, which was approved, does not alter the analysis. Nor does the fact that, after his arrest, Petitioner applied for asylum. As the Supreme Court has clarified, lawful status and admission "are distinct concepts in immigration law." *Sanchez v. Mayorkas*, 593 U.S. 409, 415 (2021). As the Supreme Court explained:

> On the one hand, a foreign national can be admitted but not in lawful status—think of someone who legally entered the United States on a student visa, but stayed in the country long past graduation. *On the other hand, a foreign national can be in lawful status but not admitted—think of someone who entered the country unlawfully, but then received asylum.*

*Id.* at 415-16 (emphasis added). *See also Medina-Rosales v. Holder*, 778 F.3d 1140, 1144-45 (10th Cir. 2015) (explaining that § 1101(a)(13)(A)'s admission definition does not encompass post-entry adjustment of status because it refers to entry into United States, denoting by its terms passage into

23

country from abroad at port of entry) (and cited cases); *Matter of V-X-, Respondent*, 26 I. & N. Dec. 147, 147 ("A grant of asylum is not an 'admission' to the United States under section 101(a)(13)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(13)(A) (2006)."). Requesting asylum is thus a request for an adjustment of status, not a request for admission. Because "seeking admission" requires actively requesting admission at the border, neither the filing of a Form I-140 nor the post-arrest filing of an application for asylum amounts to "seeking admission" within the meaning of § 1225(b)(2)(A).

Petitioner was detained in the interior of the country pursuant to a Warrant for Arrest, Form I-200. A Form I-200 is found within Section 1226 implementing regulations, 8 C.F.R. § 236, which also require a bond hearing. At the time of his detention, Petitioner was not "seeking admission," as he had already entered the United States decades prior. He therefore is detained under § 1226 and is entitled to a bond hearing. The immigration judge denied his request for a custody status change based on *Yajure Hurtado*, a decision that prevents the immigration court from considering bond. *See* Order of Immigration Judge 1, Dkt. No. 17. The immigration judge's order also noted he was a flight risk. But because the BIA considers *Yajure Hurtado* to have stripped the immigration courts of jurisdiction to consider bond, it is not clear that the immigration judge gave due consideration to Petitioner's bond request. The failure to provide him the requisite bond hearing that evaluates whether Petitioner should be released independent of and without regard to *Yajure Hurtado* violates the INA. The Court therefore recommends granting the Petition's fourth claim for relief.

### 2. Petitioner's detention for months without bond hearing also violates procedural due process.

Respondents assert that Petitioner is entitled to no more process than that prescribed by statute. Even assuming that Petitioner is only entitled to the process afforded by Congress,

Congress authorized noncitizens in Petitioner's situation a bond hearing under § 1226. Consequently, Respondents' detention of Petitioner for months without the requisite bond hearing violates both his statutory rights and his procedural due process rights. The Court thus recommends that the Petition be granted on his second claim for relief as well. Consequently, the Court need not go further and decide whether Petitioner has additional due process rights beyond those conferred by statute.

### 3. Prompt bond hearing in accordance with § 1226(a) is appropriate remedy for violation of INA.

Respondents contend that there is no legal authority justifying immediate release. Relying on § 1226(e), they argue that the Attorney General's discretionary judgment regarding the application of § 1226 is not subject to review, and thus, this Court does not have authority to order immediate release from detention. Section 1226(e) says:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention of any alien or the revocation or denial of bond or parole.

8 U.S.C. § 1226(e).

The Court recommends that the appropriate remedy for the § 1226 violation is a prompt bond hearing before an immigration judge, not immediate release. *See*, *e.g.*, *Castillo*, 2026 WL 370497, at *36 (explaining that, because noncitizen was not seeking admission, United States could not detain him under § 1225(b)(2), so it must detain him under § 1226(a) and afford him procedural protections the statute provides). At the hearing, the immigration judge must evaluate whether Petitioner should be released independent of and without regard to the jurisdictional holding of *Yajure Hurtado*. As for the timing of the bond hearing, the Court recommends that the

25

bond hearing be held within seven days. If Respondents are unable or decline to follow § 1226's statutory requirements, the Court recommends they release him immediately. *Id.*

Petitioner also requests that the Court enjoin Respondents from transferring Petitioner outside the United States. Respondents counter that this request should be denied as overbroad. Under the All Writs Act, courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Court recommends the presiding judge grant the request to enjoin Petitioner's transfer outside the United States until this habeas petition is finally decided or until Petitioner receives a final order of removal, whichever comes first, but deny the overly broad request to enjoin his deportation outside the United States. As the presiding judge explained when resolving a similar request:

> [T]he Court exercises its discretion under the All Writs Act only to enjoin Petitioners' unlawful removal from New Mexico while their habeas proceedings remain pending. The Court does not prevent, however, the United States from proceeding with the Petitioners' removal proceedings under § 1229(a) during the pendency of these habeas proceedings. The Court will not use the All Writs Act to prevent the United States from using statutory proceedings to obtain a lawful order of removal. Once the Petitioners receive a final order of removal, the United States ceases to detain the Petitioners or put them on bond under § 1226(a), but instead they transfer to § 1231's statutory authority. At that time, the Court loses jurisdiction to hear the habeas petitions for release under § 1226(a), because the habeas petitions will be moot, and, therefore, at that time the All Writs Act is no longer necessary to prevent the Court from losing jurisdiction which it no longer has. The All Writs Act, therefore, is incapable of preventing the United States from carrying out a lawful order of removal on the basis of protecting the Court's jurisdiction, because the Court will lose jurisdiction for this habeas proceeding once the United States obtains a lawful final order of removal.

*Castillo*, 2026 WL 370497, at *44.

Petitioner additionally seeks an award of reasonable attorney's fees and costs. Pet. 20, ¶ 7, Dkt. No. 1. Respondents assert that the Court should not award fees or costs because their position is substantially justified. Resp. 18, Dkt. No. 8. "The Equal Access to Justice Act (EAJA) directs a

court to award 'fees and other expenses' to private parties who prevail in litigation against the United States if, among other conditions, the position of the United States was not 'substantially justified.'" *Commissioner, I.N.S. v. Jean*, 496 U.S. 154, 155 (1990) (quoting 28 U.S.C. § 2412(d)(1)(A)). Under the EAJA, "a fee award is required if: (1) plaintiff is a 'prevailing party'; (2) the position of the United States was not 'substantially justified'; and (3) there are no special circumstances that make an award of fees unjust." *Hackett v. Barnhart*, 475 F.3d 1166, 1172 (10th Cir. 2007). The Court finds this request premature unless and until the presiding judge grants relief on the Petition. Should the Court rule in Petitioner's favor on any of the substantive causes of action, the Court recommends Petitioner be afforded an opportunity after entry of final judgment to submit a motion for attorney's fees and expenses, with an affidavit attached justifying requested fees and costs.

**4. The Court need not address Petitioner's third count for substantive due process at this time.**

Relying on *Zadvydas* in support of his substantive due process claim, Petitioner argues that, because there is no evidence he presents a danger or flight risk, the government has no interest in his continued detention. *See* Pet. ¶¶ 46-51, 77, Dkt. No. 1. Because the undersigned recommends the Court grant habeas relief on the second and fourth claims for relief and order a bond hearing before an immigration judge within seven days, Petitioner will receive an individualized determination of his flight risk and danger to the community. If the immigration judge finds one or both of those factors and continues to detain him, then Respondents will have established an interest in his detention. Alternatively, if he is given bond and ordered released, then he will no longer face prolonged detention. Consequently, the Court recommends denying Petitioner's substantive due process claim in his third claim for relief for lack of ripeness. The Court, however, recommends dismissal of that claim without prejudice, because should his detention continue, it

27

could become prolonged and cross over into punishment and a violation of his due process rights. *Cf. Singh*, 2026 WL 146005, at *39 (denying petitioner's substantive due process claim without prejudice to give "him the opportunity to refile should his detention extend to a length of time sufficient to cross over to punishment and violate his substantive due process rights"). At this point, however, a decision on that claim would be premature.

### 5. Petition should be denied as to the first claim for relief.

Petitioner asserts that ICE unlawfully arrested him without a valid warrant and before issuing an NTA, so his detention was unlawful from its inception and cannot be justified by a *post hoc* issuance of a warrant. Pet. ¶ 71, Dkt. No. 1; Reply 3, Dkt. No. 9. According to Petitioner, because ICE did not issue and serve the NTA at or before his arrest, his arrest was unlawful *ab initio* and the writ should be granted. Pet. ¶ 64, Dkt. No. 1. He relies on 8 C.F.R. § 1236.1(b), which provides that at the time the NTA is issued, or anytime thereafter before removal proceedings are completed, "the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest." *Id.* ¶ 61 (quoting 8 C.F.R. § 1236.1(b)).

Respondents counter that, even assuming that there was a defect in the arrest sequence, he is not entitled to immediate release. They urge the Court to focus on the legal basis for Petitioner's current custody, not the circumstances of his initial encounter and arrest. Additionally, they assert that he was administratively arrested with a Form I-200 warrant after a consensual encounter revealed that he was an undocumented alien who entered without inspection.

"The writ of habeas corpus shall not extend to a prisoner unless … [h]e is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). *See also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ

28

is to secure release from illegal custody"). Some district courts have ordered a petitioner's release based on an unlawful arrest. *See*, *e.g.*, *Chiliquinga Yumbillo v. Stamper*, 2:25-cv-00479-SDN, 2025 WL 278362, at \*5 (D. Maine Sept. 30, 2025); *J.A.C.P. v. Wofford*, No. 1:25-cv-01354-KES-SKO (HC), 2025 WL 3013328, at \*8 (E.D. Cal. Oct. 27, 2025).

But others have questioned that approach. *See, e.g., Trega v. Bondi*, __ F.Supp.3d __, 2026 WL 127617, at \*5 (D. Maine Jan. 16, 2016) ("Illegal arrest cannot serve as a basis for habeas relief…. Similarly, an illegal arrest is not a bar to removal, nor a means of invalidating a noncitizen's custody status pending those proceedings, where ICE arrested [the noncitizen] pursuant to a valid Form I-200 Warrant for Arrest of Alien."). As the Eastern District of Virginia concluded, illegality of a petitioner's arrest procedures does not warrant his release from custody. *See Silva v. Noem*, 1:26-cv-0072 (RDA/LRV), 2026 WL 560338, at \*33 (E.D. Va. Feb. 25, 2026). The *Silva* court's analysis is persuasive:

> As the Supreme Court has recognized, "the great and central office of the writ of habeas corpus is to test the legality of a prisoner's current detention." *Walker v. Wainwright*, 390 U.S. 335, 337 (1968). Thus, it has long been the rule that where a criminal defendant challenges his pretrial detention and is subsequently convicted, the habeas petition is mooted. *See*, *e.g.*, *Congo v. Cnty. of Phila*., 2019 WL 2635696, at \*6 (E.D. Pa. May 6, 2019) (citing cases and finding that a petitioner "does not retain standing to challenge that pretrial incarceration" following his conviction). Similarly, in the immigration context, courts have held that habeas proceedings are moot where the basis for detention changes while the habeas case is underway. *See, e.g., De La Teja v. United States*, 321 F.3d 1357, 1363 (11th Cir. 2003) (finding case moot because petitioner was detained pursuant to § 1231 rather than § 1226). Here, Petitioner is currently detained pursuant to a warrant…; thus, Petitioner cannot seek his immediate release based on the warrantless nature of his original arrest.
>
> In any event, courts have also recognized that, pursuant to 8 U.S.C. § 1357, Respondents may arrest an immigrant and subsequently seek a warrant…. As the Supreme Court has recognized, "if sufficient ground for [a petitioner's] detention by the government is shown, he is not [to] be discharged for defects in the original arrest or commitment." *Ekiu v. United States*, 142 U.S. 651, 662 (1892); *cf. United States v. Crews*, 445 U.S. 463, 474 (1980) ("An illegal arrest, without more, has never been viewed as a bar to a subsequent prosecution, nor as a defense to a valid

conviction."). The Supreme Court has further agreed that "[t]he mere fact of an illegal arrest has no bearing on a subsequent deportation proceeding." *INS v. Lopez-Mendoza*, 468 U.S. 1032, 1040 (1984). That is, "an unlawful warrantless arrest isn't a get-out-of-jail free card if a lawful basis to detain someone is subsequently established." *Salazar v. Noem*, 2026 WL 458304, at *4 (D. Neb. Feb. 18, 2026)[.]

*Id.*

Petitioner has not convinced the Court that his arrest was not lawful or that immediate release is the proper remedy based on his first claim for relief. The INA permits an immigration officer to arrest an alien without a warrant when the officer "has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357. The officer must then take the alien without delay before another examining officer. *Id.* The examining officer considers, among other things, whether there is prima facie evidence the alien is present in the United States in violation of the immigration laws, and if so, refers the case to an immigration judge. *See* 8 C.F.R. § 287.3(b). Generally, within 48 hours of the arrest, a determination will be made whether the alien will be continued in custody or released on bond and whether an NTA and arrest warrant will be issued. *Id.* § 287.3(d).

An immigration officer issued a Form I-200 in Petitioner's name and served it on Petitioner on November 13, 2025, the same day he was arrested. *See* Resp'ts' Ex. A, Dkt. No. 8-1 at 6 of 6. The officer also prepared an NTA with the basis for the removal charge against Petitioner on November 13, 2025. *Id.* at 2 of 6. Even if the immigration officer did not prepare the administrative warrant and NTA until after his detention, § 1357 of the INA authorizes that sequence. The Court is therefore not persuaded that the manner of Petitioner's arrest would entitle him to immediate release under these circumstances. *Cf. Silva*, 2026 WL 560338, at *3 ("[P]ursuant to 8 U.S.C. § 1357, Respondents may arrest an immigrant and subsequently seek a warrant…. This Court need

30

not decide whether a petitioner could be held under Section 1226(a) without a warrant ever issuing because here a warrant issued following arrest."); *Fernando C. C. v. Bondi*, No. 26-cv-1235 (LMP/JFD), 2026 WL 446408, at *2 (D. Minn. Feb. 17, 2026) ("This Alice in Wonderland-like trail of immigration laws, therefore, authorizes immigration officers to arrest a noncitizen without a warrant, *see* 8 U.S.C. § 1357(a)(2), and determine within 48 hours to issue a warrant of arrest under 8 C.F.R. § 236.1, *see* 8 C.F.R. § 287.3(d), which subsequently unlocks the door to discretionary detention under 8 U.S.C. § 1226(a), *see* 8 C.F.R. § 236.1(c)(8)…. Accordingly, a warrantless arrest under 8 U.S.C. § 1357(a)(2) is a threshold exception to arrest by warrant and, after the arrest, detention may proceed under Sections 1225, 1226, and 1231. *See* 8 C.F.R. § 287.3(d)."). After issuance of the warrant, Petitioner's detention shifted to § 1226, under which he is entitled to a bond hearing. The Court recommends ordering the bond hearing to be held within seven days. Under these circumstances, he is not entitled to immediate release. Therefore, the Court advises the presiding judge to deny the first claim for relief.

### B.  TRO Motion should be denied.

Petitioner filed a separate motion for a TRO in which he requests an order prohibiting Respondents from removing Petitioner from the United States. As explained above, the Court recommends the Petition be granted on the merits of counts two and four but denied as to counts one and three. As one of the recommended remedies, the Court advises the presiding judge to grant the request to enjoin Petitioner's transfer outside the United States until this habeas petition is finally decided or until Petitioner receives a final order of removal, whichever comes first, but deny the broad request to enjoin his deportation outside the United States. The relief requested in the TRO Motion duplicates the relief requested in the Petition. Moreover, Respondents acknowledge that Petitioner's appeal before the BIA is pending, and he is entitled to a stay of

31

removal pending the conclusion of the appeal. Respondents confirmed that they will not remove Petitioner so long as his appeal remains pending and there is no final order of removal. Given the Court's recommendations set forth herein on the merits and on the requested remedies in the Petition, and Respondents' representations, the Court recommends that the TRO Motion be denied as moot.

## VI.    CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** the *Emergency Motion for Temporary Restraining Order* (**Dkt. No. 11**) should be **DENIED as moot** and the *Verified Petition for Writ Habeas Corpus and Complaint for* (**Dkt. No. 1**) should be **GRANTED IN PART and DENIED IN PART** as follows:

A. The Petition should be **GRANTED** as to the second and fourth claims for relief.

B. The Petition should be **DENIED** as to the first and third claims for relief.

C. The following remedies requested in the Petition should be **GRANTED**:

  i. Assume jurisdiction over the Petition;

  ii. Issue a writ of habeas corpus ordering an individualized bond hearing before an immigration judge be held within seven days,

  iii. Enter an order enjoining Petitioner's transfer outside the United States until this habeas petition is finally decided or until Petitioner receives a final order of removal, whichever comes first;

  iv. Declare Petitioner's ongoing detention without a bond hearing to be in violation of the Due Process Clause of the Fifth Amendment.

D. The following remedies requested in the Petition should be **DENIED**:

       i.   The broad request to enjoin his deportation outside the United States, except as limited herein;

     ii.   The request for an order to show cause requiring a response within three days should be denied as moot; and

    iii.   The request to order Petitioner's immediate release from custody.

E.   The Court should reserve ruling on Petitioner's request for reasonable attorney's fees and costs until the matter becomes ripe and is fully briefed.

**SO RECOMMENDED.**

> **THE PARTIES ARE NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

**THE HONORABLE GREGORY J. FOURATT**
**UNITED STATES MAGISTRATE JUDGE**

33